IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HECTOR HOYOS-ALIFF;
BIOMETRICS IMAGINEERING, INC.
TRANSACTIONAL TECHNOLOGIES INTERNATIONAL, INC.

Plaintiffs

vs

CIVIL 04-1859CCC

FOMENTO DE CONSTRUCCIONES Y CONTRATAS, S.A.;
VIVENDI, S.A.;
ANGEL ARIAS;
CARLOS AGUASCA-CASTELLS;
JAVIER GIL-CACERES;
STEPHAN ORSSICH AND
ABC AND XYZ INSURANCE COMPANIES

Defendants

# O R D E R

This action was commenced by Héctor Hoyos-Aliff (Hoyos), Biometrics Imagineering, Inc. (Biometrics) and Transactional Technologies International, Inc. on August 18th, 2004, against codefendants Fomento de Construcciones y Contratas, S.A. (FCC), Francisco Javier Gil-Casares (Gil-Casares), Stefan Orssich (Orssich) and other defendants. As claimed by FCC, the Amended Complaint filed on September 6, 2005 (docket entry 39) alleges substantially similar, if not identical, claims against defendants as those that were sub-judice in an arbitration proceeding filed on October 9th, 2002 ("the Arbitration") by Proactiva Medio Ambiente (Proactiva). According to FCC, in said Arbitration, now undergoing appellate review, plaintiffs Hoyos and Biometrics filed a counterclaim which is essentially a translated version of the same claims now before this Court ("the Counterclaim"). The Counterclaim included FCC as a claimee, among others, but it was dismissed as party to the Arbitration on February 3rd, 2004 because its inclusion a year after filing the Counterclaim would have delayed the proceedings and because it was not a signatory to the Arbitration clause. This suit against FCC was thereafter commenced.

On June 29, 2005, FCC moved to dismiss this action (**docket entry 24**) claiming that as a Spanish based partnership, not presently (or in the past) conducting business in Puerto Rico, it has had no contacts with this forum sufficient for this Court to properly exercise jurisdiction over it. FCC claims that it is not a party or signatory to the "Acuerdo Marco" executed between Hoyos and Proactiva, the document on which plaintiffs base their main claims, and that it has had no minimum contacts with this forum for this Court to properly compel it to defend from plaintiffs' claims. Accordingly, FCC requests the dismissal of all claims against it under Fed. R. Civ. Proc. 12(b)(2) for want of personal jurisdiction.

On August 11, 2005, Plaintiffs opposed FCC's motion (**docket entry 30**). After considering the arguments presented by both parties to the jurisdictional controversy, the Court GRANTS FCC's motion and, consequently, dismisses the complaint filed against it.

A. Standard for motion to dismiss under Fed. R. Civ. Proc. 12(b)(2).

Upon a motion to dismiss under Fed. R. Civ. Proc. 12(b)(2) for lack of personal jurisdiction, it becomes plaintiffs' burden to prove a prima facie case that movant is indeed amenable to judicial proceedings in this forum. See American Express International, Inc. v. Méndez-Capellan, 889 F. 2d 1175 (1st Cir 1989); Rivera Torres v. Resort World of Orlando, 359 F Supp. 2d 31, 32 (D.P.R. 2005). Plaintiffs' prima facie case for jurisdiction must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution. This prima facie showing must be based upon evidence of specific facts set forth on the record of the case, and must rest on affirmative proof beyond the pleadings. See U.S. v. Swiss American Bank, Ltd., 274 F. 3d 610 (1st Cir. 2001) as cited in Wright & Miller, Federal Practice and Procedure, Federal Rules of Civil Procedure, V. 5B §1351 p. 288 n.30 (West Group 2002). This standard takes those facts alleged by plaintiffs and "construes them in the light most favorable to plaintiff's jurisdictional claim," see

Ticketmaster-New York v. Alioto, 26 F 3d 201, 203 (1st Cir. 1994), and then include facts presented by defendant, only to the extent that they are "uncontradicted." See Topp v. Comp. Air Inc., 814 F 2d 830, 836-37 (1st Cir. 1987).

B. Plaintiffs' prima facie showings attempt.

In their opposition, plaintiffs recognize that they must make a prima facie showing of general jurisdiction over FCC. In an effort to make that showing, plaintiffs claim that FCC has engaged in continuous and systematic business activity within Puerto Rico since approximately 1999 (see docket entry 30, at pp. 6-7). However, other than a claim that FCC advertised in its website that it serves different Latin American and Caribbean countries, one of which is Puerto Rico, no other evidence of such business activity is offered. Although plaintiffs make much ado about FCC's relation with "Compañía de Aguas," which for a period of time managed Puerto Rico's water supply, their own evidence demonstrates that said "Compañía" was owned by Proactiva. Thus, no true juridic link with this forum is given to support a finding of general jurisdiction.

In relation to specific jurisdiction, plaintiffs would like this Court to consider that FCC's activity of having one of its subsidiaries--Proactiva- sign the "Acuerdo Marco," was in effect an attempt by FCC to continue in charge of that project, and as such constituted sufficient basis for a positive finding of in personam jurisdiction. No supporting evidence whatsoever was afforded this Court to allow the making of such a finding. Plaintiffs' conjectures and inferences are insufficient to compel this Court to tie FCC with the jurisdictional leash.

C. The exercise of general or specific jurisdiction over plaintiffs' claims against FCC.

The Due Process Clause of the Federal Constitution protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. See Burger King v. Rudzewicz, 471 U.S. 462, 471-472 (1985). Therefore, a binding decision can only be made when the court has personal jurisdiction over each party to the case. See Trío Realty, Inc. v. ELDORADO Homes, Inc., 350

F Supp. 2d 322, 325 (D.P.R. 2005), citing Rodríguez v. Dixie Southern Industrial, Inc., 113 F. Supp. 2d 242, 249 (D.P.R. 2000). This is why it is ultimately the plaintiffs' burden to establish that personal jurisdiction over the defendant exists. Id. citing Mass. School of Law at Andover v. American Bar Association, 142 F. 3d 26, 34 (1st Cir. 1998); see also McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

1. General jurisdiction.

A court may assert personal jurisdiction over a defendant when it possesses either general or specific jurisdiction. See Helicópteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). General jurisdiction exists when the lawsuit is not directly based on the defendant's contacts with the forum, but when the defendant has engaged in systematic and continuous activities in said forum. See Trío Realty, Inc. v. ELDORADO Homes, Inc., 350 F Supp. 2d at 325 citing Foster-Miller v. Babcock & Wilcox Can., 46 F. 3d 138, 144 (1st Cir. 1985).

In the present case, general jurisdiction is not applicable. As we noted above, plaintiffs failed to make a prima facie showing of the existence of general jurisdiction, and we see nothing on the record to support a finding of such jurisdiction. FCC is a foreign partnership and there is no evidence to show that it has engaged in either continuous or systematic activities in the present forum. Its only interaction with this forum was its bids for public work contracts, the most recent held back in October 23, 2001, none of which were adjudicated in favor of FCC. This is simply insufficient for a finding of "systematic and continuous" contact with the forum or personal jurisdiction over FCC in this case. See Helicópteros Nacionales de Colombia, SA v. Hall, 466 U.S. 408, 418 (1984) (denying general jurisdiction, finding that the defendant did not have sufficient "systematic and continuous" contact with the forum state, although it had purchased millions of dollars worth of products, negotiated a contract and even trained employees from within the forum state).

Taking into account the contacts that the Supreme Court failed to recognize as sufficient in Helicópteros to assess general jurisdiction over a foreign party, there is no doubt that it would be unreasonable and unjust to force FCC to defend in Puerto Rico since its actions clearly fall short of being "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." See International Shoe Co. v. Washington, 326 U.S. 310, 318 (1945). Thus, there is lack of general jurisdiction over FCC for this Court to exercise personal jurisdiction over it.

2. Specific jurisdiction.

Specific jurisdiction exists when "the cause of action arises directly out of, or relates to, the defendants' forum-based contacts." See United Electrical Workers v. 163 Pleasant St. Corp., 960 F. 2d 1080, 1088-89 (1st Cir. 1992). International Shoe Co. v. Washington, supra, the Supreme Court case that set the constitutional limits upon the exercise of in personam jurisdiction, established that such contacts or ties must be sufficient to make it "reasonable and just, according to our traditional conception of justice, to permit the state to enforce the obligations which the defendant may have incurred there." Id. at p. 320. In diversity cases, it is required of the plaintiff to establish two conditions: (a) that the forum has a long arm statute which purports to grant jurisdiction over defendant and (b) that the exercise of jurisdiction does comports with the Constitution's strictures. See Pritzker v. Yari, 42 F. 3d 53, 60 (1st Cir. 1994).

a) Puerto Rico's Long Arm Statute does not extend this Court's jurisdiction over FCC.

With regard to this first prong in the analysis of whether to exercise of jurisdiction over a non-resident party, a federal court "is the functional equivalent to a state court sitting in the forum state." See Rivera Torres v. Resort World of Orlando, 359 F Supp. 2d at 33, citing Ticketmaster-New York v. Alioto, 26 F 3d at 204. Therefore, in diversity cases, a federal court cannot exceed the jurisdictional reach of the courts of the forum in which it sits. See American Express International, 889 F. 2d at 1178. Puerto Rico's long arm statute, Rule 4.7 of Puerto

Rico's Rules of Civil Procedure, 32 P.R. Laws Ann. App. III Rule 4.7(a) (1), (2) (2001), extends personal jurisdiction as far as the Federal Constitution permits. See Vencedor Mfg Co. v. Gougler Indus, Inc., 557 F. 2d 886, 889 (1st Cir. 1977); Pritzker v. Yari, 42 F. 3d at 60. Thus, the Court will focus solely on the federal constitutional analysis of whether exercise of jurisdiction over FCC is constitutionally permissible. See Trío Realty, Inc. v. ELDORADO Homes, Inc., 350 F Supp. 2d at 325 citing Sawtelle v. Farell, 70 F.3d 1381, 1389 (1st Cir. 1995).

A parent corporation may not be subject to jurisdiction merely because its subsidiary transacts business or has domicile in the forum. See González v. Walgreens, 878 F.2d 560, 561 (1st Cir. 1989) (citing Alvarado-Morales v. Digital Equip. Corp., 843 F.2d at 616). Furthermore, it has been validated that a court does not obtain jurisdiction over a defendant, such as FCC, simply because of its status as parent company of another entity, such as Proactiva. See Volkswagenwerk Aktienaesellschaft v. Beech Aircraft, 751 F.2d 117, 120 (2d Cir. 1984); Weston Chemical, Inc. v. Diamond Fertiliser & Chem., 1990 U.S. Dist. LEXIS 11545. In order for this court to properly assert jurisdiction over FCC under Rule 4.7(a)(1), the "presumption of [corporate] separateness must be overcome by strong and robust evidence that the parent . . . controlled the subsidiary's business as a whole." See Morales v. Eli Lilly & Co., 2000 U.S. Dist. LEXIS 22101 (D.P.R. 2000) citing Alvarado-Morales v. Digital Equip. Corp., 843 F.2d at 616. Puerto Rico law requires that to establish jurisdiction over FCC, Hoyos and Biometrics must produce "strong and robust evidence of control by the parent company (FCC) over its subsidiary (Proactiva), rendering the latter a mere shell." Id. citing De Castro v. Sanifill, Inc., 198 F.3d 282, 283-84 (1st Cir. 2000) citing San Miguel Fertilizer v. Puerto Rico Drydock & Marine Terminals, 94 P.R.R. 403, 409, 94 P.R. Dec. 424 (1967)).

Plaintiffs have not persuaded this Court that there is sufficient evidence pointing to the interrelationship of FCC and Proactiva's management and operations to conclude that the two companies are but one integrated enterprise. Unless otherwise shown, FCC and Proactiva are

presumed to be separate and distinct legal entities, with separate board of directors, books, accounts and payroll records. See Morales v. Eli Lilly & Co., 2000 U.S. Dist. LEXIS 22101 (D.P.R. 2000). Plaintiffs' bare, conclusory assertions that FCC allegedly acted in conjunction with Proactiva are insufficient to meet the strong and robust evidence requirement or to show that FCC controlled the activities and decisions of Proactiva.

(b) The Court's exercise of jurisdiction over FCC would not comport with federal constitutional strictures.

As it pertains to the second prong of the analysis, whether the exercise of jurisdiction comports with the Constitution's strictures, this Court will conduct a "tripartite" inquiry into FCC's contacts with Puerto Rico. See Trío Realty, Inc., 350 F Supp. 2d at 326. These three inquiries are the relatedness test, the availment test, and the reasonableness test, this last one also known as the gestalt factors. See Sawtelle, 70 F. 3d at 1389. There must be an affirmative finding on each of the three parts of the test in order to support a finding that specific jurisdiction exists. See Trío Realty, Inc. v. ELDORADO Homes, Inc., 350 F Supp. 2d at 326, citing Phillips Exeter Acad. v. Howard Phillips Fund, 196 F. 3d 284, 288 (1st Cir. 1999).

In Ticketmaster, the First Circuit Court summed up the three-tier inquiry as follows:

> . . . the machinery of jurisdictional analysis is designed to refine judges' intuitions about the relevant equities, not to eliminate those equities from the decisional process. Relatedness and purposeful availment are cogs in this analytic machinery. The gestalt factors comprise the machinery's fail-safe device; they are not a necessary part of the machinery's day-to-day operation, but if, in the course of a particularized analysis, the gears mesh imperfectly because a given set of facts does not fit into any of the standard molds, the gestalt factors take hold.

(i) Relatedness Test.

For plaintiffs to comply with the relatedness test, it must prove that the underlying litigation directly arose out of, or related to, the defendant's forum-state activities. See Pritzker v. Yari, 42 F. 3d at 60-61. The test focuses on the nexus between the defendant's contact with the forum and the plaintiff's cause of action. See Nowak v. Tak How Investments, Ltd., 94 F. 3d 708, 714 (1st Cir. 1996). In breach of contract claims, the Court must look at the

elements of the cause of action in order to determine "whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." See Phillips Exeter, 196 F. 3d at 289. This same test has been used in cases where tort is alleged under the scope of intentional interference with contractual or business relationships. See Trío Realty, Inc. v. ELDORADO Homes, Inc., 350 F Supp. 2d at 327, citing Jet Wine & Spirits, Inc. v. Bacardi & Co. Ltd., 298 F 3d 1, 11(1st Cir. 2002). The relatedness test is met only when the plaintiff's cause of action arises directly out of the specific contacts between the defendant and the forum state. See Rodríguez v. Dixie Southern Industrial, Inc., 113 F. Supp. 2d 251.

As stated above, FCC does not maintain sufficient contacts with Puerto Rico, since its sporadic or limited bidding in public work contracts falls within those actions explicitly rejected as insufficient by the Supreme Court in Helicópteros, supra. Even if said contacts were somehow deemed sufficient for the exercise of jurisdiction over FCC, they were neither instrumental in the formation nor on the breach of the contract between Proactiva and plaintiffs. The only action that can remotely link FCC to Proactiva's contractual obligations with one or more of the plaintiffs is the fact that FCC, as part owner of Proactiva, authorized Proactiva (its affiliate) through a "Comisión Ejecutiva," the equivalent of a Board of Directors' subcommittee, to participate in the "Reserva" project alleged in the complaint. This internal and typical corporate action by FCC, made in Spain and relating to one of its affiliates, cannot be construed as complying with the relatedness test. Plaintiffs are requesting the Court to improperly exercise jurisdiction based on a general relationship between them and FCC. See Trío Realty, Inc. v. ELDORADO Homes, Inc., 350 F Supp. 2d at 327, citing Phillips Exeter, supra, at 290 ("the claim may not arise out of a general relationship between the plaintiff and the defendant.") Plaintiffs did not prove that FCC fulfills the relatedness test for exercise of jurisdiction.

(ii) Availment Test.

The second hurdle that plaintiffs must cross is proving that FCC's contacts represent a purposeful availment of the privilege of conducting activities in Puerto Rico (voluntariness), thereby invoking benefits and protections of the Commonwealth's laws and making the defendant's involuntary presence before Puerto Rico courts foreseeable (foreseeability). See Pritzker v. Yari, 42 F. 3d at 60-61. Just as the relatedness test, the availment inquiry is an aspect of demonstrating minimum contacts pursuant to International Shoe. See Nowak, 94 F 3d at 713. The purposeful availment prong is meant to ensure that personal jurisdiction is not based only upon a defendant's random or isolated contacts with the forum. See Sawtelle, 70 F.3d at 1391. The defendant's contacts with the forum should be voluntary and not based on the unilateral actions of a third party. See Nowak, 94 F 3d at 713. Exercising jurisdiction is appropriate where defendant purposefully derives economic benefits from its forum-state activities. See Trío Realty, Inc. v. ELDORADO Homes, Inc., 350 F Supp. 2d at 332, citing Nowak, 94 F 3d at 713 and Pritzker v. Yari, 42 F. 3d at 61-62.

Here, any economic benefit that would eventually be derived by FCC from the activities detailed in the Acuerdo Marco is not and would not have been directly linked to FCC's activities or contacts within Puerto Rico. Such benefits would be directly attributable to Proactiva's activities. Therefore, FCC does not directly derive economic benefit from its forum state activities, because it had no forum state activities. In addition, plaintiffs also failed to prove that the nature of FCC's contacts were such that it could have reasonably anticipated the possibility of being subject to a lawsuit in Puerto Rico. Id. Once a defendant purposefully conducts activities in a state, it has clear notice and knows, or should know, that it may be subject to suit in the courts of that jurisdiction. See De la Rosa v. Phillips Morris, 975 F. Supp. 161, 168 (D.P.R. 1997). Based on the "Acuerdo Marco," however, FCC could not have foreseen being subject to a suit by Hoyos, Biometrics or any other person in Puerto Rico. Any judicial action in this forum arising out of the "Acuerdo Marco" should have been between the contracting

parties. FCC was not a party to the Acuerdo Marco and there is no evidence that it is presently conducting or that it has ever conducted business in Puerto Rico, other than bidding in public work contracts years back. In sum, plaintiffs have not proved that FCC fulfills the availment test for exercise of this Court's jurisdiction over said foreign corporation.

(iii) Reasonableness Test.

Plaintiffs' last obstacle in their attempt to demonstrate that this Court can properly exercise personal jurisdiction over FCC requires proof that such exercise is reasonable. In its analysis of the gestalt factors, the Court "bear[s] upon the fairness of subjecting [nonresidents] to the authority of a foreign tribunal." See Sawtelle, 70 F.3d 1394, as cited in Trio Realty, Inc. v. ELDORADO Homes, Inc., 350 F Supp. 2d at 328. The gestalt factors to be considered by the Court are: (1) defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution to the controversy; and (5) the common interest of all sovereigns in promoting substantive social policies. See Burger King, 471 U.S. at 477. In Sawtelle, the Court of Appeals for the First Circuit recognized a sliding scale analysis for this third requirement of the specific jurisdiction inquiry, since the weaker the plaintiff's showing on the relatedness and purposeful availment tests, the less defendant needs to show in terms of reasonableness in order to properly defeat the call for exercise of personal jurisdiction. Id., at 1394; Trio Realty, Inc. v. ELDORADO Homes, Inc., 350 F Supp. 2d at 327; Ticketmaster, 26 F 3d at 210.

With regard to the first factor, it has been held that defendant must demonstrate a special or unusual burden in order to tilt the scale in favor of lack of personal jurisdiction, since defending in a foreign jurisdiction is always inconvenient for the out-of-state party. See Pritzker, 42 F 3d at 64. Still, since FCC's place of business is located in Barcelona, Spain, it truly would be a costly and burdensome task to defend itself in this forum. See Ticketmaster, 26 F 3d at

210 ("most of the cases that have been dismissed on grounds of unreasonableness [of the burden of appearing] are cases in which the defendant's center of gravity, be its place of residence or place of business, was located at an appreciable distance from the forum".) See Ashani Metals Industrial Co., v. Superior Court, 480 U.S. 102, 114 (1987) (Japanese defendant sued in California); Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1488-90 (9th Cir. 1993) (Swedish defendant sued in California; defamation action); Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 852 (9th Cir. 1993) (Filipino defendant sued in Washington); Casualty Assur. Risk Ins. Brokerage Co. v. Dillon, 976 F.2d 596, 600 (9th Cir. 1992) (District of Columbia defendant sued in Guam; defamation action). Absent sufficient grounds to allow it, and we find none, this Court's exercise of personal jurisdiction over FCC would entail its officers and employees having to incur in travel and lodging expenses to defend in a forum selected by plaintiffs. See Ticketmaster, 26 F 3d at 210 citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ("plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy.") This factor clearly tilts in favor of FCC.

The second gestalt factor, Puerto Rico's interest in having a Puerto Rico based court adjudicate the dispute, again weighs in FCC's favor. FCC avers that the present case was filed by plaintiffs as a security blanket against a possible adverse determination in the Arbitration, and we do not find that claim to be far-fetched. The First Circuit has recognized that when disingenuous intentions are behind the suit filed against a foreign party, the state's interests in adjudicating the dispute is diminished. See Ticketmaster, 26 F 3d at 211(". . . if appellant in fact filed suit primarily to retaliate against Alioto's role in the California litigation rather than to right an independent wrong--and . . . there are some clues in the record that could lead to such a deduction-- the [forum's] interest would be much diminished"). Therefore, we find that there is a milder than usual interest in the furtherance of plaintiffs' claims in this forum.

The third factor is plaintiffs' interest in obtaining convenient and effective relief. While a plaintiff's choice of forum is allowed a degree of deference, see Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981), such a selection is poisoned when one considers the fact that FCC is not a party to the Acuerdo Marco, the genesis of this case, executed by plaintiffs. Hoyos and Biometrics' interest in obtaining convenient and effective relief though this action is viewed with suspicion since they are presently parties in two proceedings, the Arbitration now on appeal and this case, where they allege the same claims for damages based upon the same facts and essentially request the same relief. As such, any award granted in Arbitration in favor of (or against) plaintiffs could likely turn the present controversy moot. This clearly weighs against plaintiffs' interests towards obtaining convenient and effective relief through this action, having previously chosen to arbitrate the same issues.

The fourth factor that plaintiffs must tend to is the judicial system's interest in obtaining the most effective resolution to the controversy. There can be no question that the most effective relief that can be granted in favor of plaintiffs is currently on appeal after the panel of arbitrators issued its Arbitration Award in a proceeding involving plaintiffs and Proactiva, the parties that actually executed the Acuerdo Marco. The final determination on appeal of the Arbitration will inevitably decide plaintiffs' claims. Thus, we conclude that the most effective way to resolve plaintiffs' claims is not by exercising personal jurisdiction over FCC in this case, but through the adjudication of plaintiffs' claims against Proactiva in the Arbitration. Therefore, the fourth gestalt factor heavily weighs in favor of FCC's request for dismissal.

Finally, the common interest of all sovereigns in promoting substantive social policies must be proven. The federal policy in favor of arbitration would be eroded if this Court agrees with plaintiffs and exercises jurisdiction over FCC. See Lawson Fabrics, Inc. v. Akzona, Incorporated, 355 F. Supp. at 1146 (S.D. N.Y.) By forcing FCC to defend the present case, the Arbitration, which only awaits resolution on appeal, would be rendered meaningless and the clear intention of the parties to arbitrate issues arising out of the Acuerdo Marco would be

invalidated. Such an exercise may also yield inconsistent results, see D.J. Manufacturing, Corp. v. Tex Shield, Inc., 998 F. Supp. 140, 147 (D.P.R. 1998), and position plaintiffs to have a second bite at the apple. Although the Arbitration award was adverse to their interests, plaintiffs had the opportunity in the Arbitration to fully argue their case, present evidence and litigate the issues now raised here. This Court's exercise of personal jurisdiction over FCC in the present case would undoubtedly render the federal public policy that promotes and encourages arbitration between consenting parties useless. This last gestalt factor tilts, just as the other four, against this Court's exercise of personal jurisdiction over FCC.

Thus, all five gestalt factors suggest that it would not be reasonable to exercise personal jurisdiction over FCC. Such an exercise over FCC, as a foreign partnership without substantive minimum contacts with Puerto Rico, would unfairly burden it.

D. Conclusion.

For the reasons stated, the Court concludes that it cannot should not exercise personal jurisdiction over defendant FCC. This Court's commitment to fair play and substantial justice, precludes subjecting FCC, as a foreigner, to the rigors of long-distance litigation. See Ticketmaster, 26 F 3d at 212.

For the above stated reasons, FCC's Motion Requesting Dismissal of Action (**docket entry 24**) is hereby GRANTED. Partial judgment shall be entered accordingly DISMISSING the action against FCC.

SO ORDERED.

At San Juan, Puerto Rico, on March 27, 2006.

S/CARMEN CONSUELO CEREZO
United States District Judge